**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**AMANDA L. MARTIN,**

                              **Plaintiff,**

**v.**

                                                      **18-CV-1478-HKS**

**ANDREW SAUL, Acting**
**Commissioner of Social Security,**

                         **Defendant.**

_____

**DECISION AND ORDER**

          Plaintiff, Amanda L. Martin, brings this action pursuant to the Social

Security Act ("the Act") seeking review of the final decision of Acting Commissioner of

Social Security (the "Commissioner"), which denied her application for supplemental

security income ("SSI") under Title XVI of the Act.  Dkt. No. 1.  This Court has

jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to

the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No.

24.

          Both parties have moved for judgment on the pleadings pursuant to

Federal Rule of Civil Procedure 12(c).  Dkt. Nos. 14, 23.  For the reasons that follow,

Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) is DENIED and

Defendant's Motion for Judgment on the Pleadings (Dkt. No. 23) is GRANTED.

1

## BACKGROUND

On August 26, 2014, Plaintiff protectively filed an application for with the Social Security Administration ("SSA") alleging disability since August 26, 2014, due to: Degenerative Disc Disease; Arthritis; Bi-polar; Depression; Social Anxiety; PTSD; and ITP.  Tr.[1] 183-189, 217.  On April 1, 2015, Plaintiff's claims were denied by the SSA at the initial level and she requested review.  Tr. 105-117.  On August 15, 2017, Plaintiff appeared without an attorney and testified before Administrative Law Judge, Maria Herrero-Jaarsma ("the ALJ"), but the hearing was adjourned for Plaintiff to obtain representation.  Tr. 88-101.  On November 8, 2017, Plaintiff appeared with her attorney and testified, along with a vocational expert ("VE") before the ALJ.  Tr. 31-73.  On January 18, 2018, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act.  Tr. 8-30.  Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on March 5, 2018. Tr. 1-7.  Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision.  Dkt. No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] References to "Tr." are to the administrative record in this matter.  Dkt. No. 9.

substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

I.    **The ALJ's Decision**

      The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 26, 2014, the alleged onset date.  Tr. 13.   At step two, the ALJ found Plaintiff has the following severe impairments:  Lumbar Degenerative Disc Disease; Osteoarthritis resulting in left hip pain; Idiopathic Thrombocytopenic Purpura ("ITP"); Bipolar Disorder with Depression; Anxiety Disorder with Panic Attacks; and Posttraumatic Stress Disorder ("PTSD").  Tr. 14.  At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment.  Tr. 14-16.

      Next, the ALJ determined Plaintiff retained the RFC to perform a limited range of sedentary work.[2]   Tr. 16-23.  Specifically, the ALJ found Plaintiff requires changing positions from sitting to standing during the eight-hour workday all while remaining on task.  Tr. 16.  The ALJ found Plaintiff can sit for up to one hour before having to shift positions and can stand and/or walk for up to thirty minutes before she needs to sit, all while remaining on task.  *Id.*  The ALJ further found Plaintiff can occasionally push, pull, climb ramps and stairs, balance on level surfaces, and stoop; but never kneel, crouch, or crawl.  *Id.*  The ALJ noted Plaintiff has no manipulative,

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. 416.967(a).

visual, communicative and environmental limitations.  *Id.*  The ALJ found Plaintiff is able to understand, carry out, and remember simple directions, instructions and routine tasks and work in a low stress environment (meaning one with no supervisory responsibilities; no work at production rate pace and no fast-moving assembly line-type work; no independent decision-making required except with respect to simple, routine, repetitive decisions; and with few, if any, work place changes in routines, processes or settings).  *Id.*  The ALJ concluded the Plaintiff can tolerate work that would not require a high level of attention to detail, work that is subject to no more than occasional supervision, and work that involves occasional contact and interaction with supervisors, co-workers and the public.  *Id.*  Lastly, the ALJ concluded Plaintiff can be around co-workers throughout the day, but cannot perform tandem job tasks requiring cooperation with coworkers, rather she can perform work that does not require teamwork, such as on a production line.  *Id.*

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 23.  At step five the ALJ concluded, based on the VE's testimony in consideration of Plaintiff's age, education, work experience, and RFC, that Plaintiff was capable of performing other work existing in significant numbers in the national economy.  *Id.*  Specifically, the ALJ found Plaintiff could perform the following jobs:  "Final Assembler," "Toy Repairer," and "Laboratory Tester."  Tr. 23-24.  Accordingly, the ALJ found Plaintiff was not disabled under the Act from August 26, 2014, through January 18, 2018.  Tr. 24.

## II.   Analysis

Plaintiff argues that remand is warranted because the ALJ erred by failing to fully develop the record and in evaluating Plaintiff's ability to deal with stress.  Dkt. No. 14 at 15-20, 20-24.  The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed.  Dkt. No. 23 at 12.  This Court agrees for the reasons that follow.

### A.  The ALJ fulfilled her duty to develop the record.

Plaintiff argues the administrative record is incomplete because medical records from Roswell Park Hematology-Oncology of Niagara ("Roswell Park") and Niagara Falls Memorial Medical Center ("Niagara Falls MMC") are missing, creating gaps that should have prompted the ALJ to seek additional information.  Dkt. No. 14 at 15-20.   Plaintiff contends that the ALJ neglected her duty to develop the record by failing to make any effort to obtain these missing medical records on her behalf and therefore erred in making an RFC determination based on an incomplete record.  *Id.* The Commissioner contends that Plaintiff never indicated there were any more outstanding records nor did she ask for assistance in obtaining the records from the ALJ and, to date, has failed to establish that the purportedly missing evidence actually exists.  Dkt. No. 23 at 15.

The Act provides that the Commissioner "shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence […] necessary" to determine whether the claimant is

disabled.  42 U.S.C. § 423(d)(5)(B).  Indeed, an ALJ's failure to adequately develop the

record is an independent ground for vacating the ALJ's decision and remanding the

case.  *Morgan v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009) (internal quotation marks,

ellipsis, and brackets omitted).  "[T]he social security ALJ, unlike a judge in a trial, must

on behalf of all claimants … affirmatively develop the record in light of the essentially

non-adversarial nature of a benefits proceeding."  *Lamay v. Comm'r of Soc. Sec.*, 562

F.3d 503, 508-09 (2d Cir. 2009) (citations and alterations omitted); see also *Butts v.*

*Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004) ("It is the ALJ's duty to investigate and

develop the facts and develop the arguments both for and against the granting of

benefits.") (citations and alterations omitted).


       "Where there are deficiencies in the record, an ALJ is under an affirmative

obligation to develop a claimant's medical history even when the claimant is

represented by counsel or a paralegal."  *Guillen v. Berryhill*, 697 Fed. App'x. 107, 108

(2d Cir. 2017) (quoting *Brault v. Social Security Administration, Commissioner*, 683 F.3d

443, 337 (2d Cir. 2012)).  "In order to discharge [the duty to develop the record], the ALJ

should 'make every reasonable effort to help [the claimant] get medical evidence from

[her] own medical sources….'" *Blackman v. Berryhill*, 2018 WL 3372968 *6, *7

(W.D.N.Y. 2018) (citing 20 C.F.R. § 404.1512(b)(1)).  An ALJ may satisfy her duty to

develop the record by holding the hearing open to permit submission of additional

evidence.  *See Melton v. Colvin*, 2014 WL 1686827, at *8 (W.D.N.Y. 2014) ("the ALJ

satisfied her duty to develop the record by holding the record open after the hearing and

subsequently granting Plaintiff's request for an additional 7-day extension").  "Where

there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callhan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (internal quotation marks and citation omitted).

The Commissioner relies on *Jordan v. Comm'r of Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005) (unpublished) in asserting that the ALJ fulfilled her duty to develop the administrative record.  Dkt. No. 23 at 16.  In *Jordan*, the claimant argued the ALJ failed to obtain records from a treating physician whom the claimant referenced at his hearing, prior to rendering his decision.  142 F. App'x at 543.  The Second Circuit Court of Appeals considered the following circumstances: (1) the claimant's counsel volunteered to secure physician's records; (2) the ALJ kept the record open to allow counsel to secure the missing records, and later notified counsel that the evidence had not been received and that a decision would be made on the existing record unless the evidence was produced; (3) counsel subsequently contacted the SSA to advise that the claimant had nothing further to add to the record; and (4) the claimant did not request the ALJ's assistance in contacting or securing evidence from the treating physician.  *Id.* Under those circumstances the Second Circuit Court of Appeals concluded "we cannot say that the ALJ failed to discharge his duty to develop the record."  *Id.*

The Second Circuit's summary order, while non-precedential, is nonetheless instructive toward evaluating the circumstances in this matter.  Here, Plaintiff's counsel first notified the ALJ before the administrative hearing that Plaintiff

was seeking material evidence from Roswell Park and Niagara Falls MMC, among a list of several other health care treatment facilities.  Tr. 284-85.  During the administrative hearing on November 8, 2017, the ALJ stated that she would hold the record open for seven days for counsel to submit additional records and subsequently notified counsel on November 22, 2017, that no additional evidence had been received and that a decision would be made on the existing record, unless the additional evidence was produced.  Tr. 34, 286.  Plaintiff's counsel then contacted the ALJ on December 4, 2017, to request an additional two weeks to obtain missing medical records from Niagara Falls MMC, Niagara Falls Mental Health, and Roswell Park, which the ALJ granted.  Tr. 287.

Subsequently, Plaintiff's counsel submitted additional medical records from Erie County Medical Center Oncology Department (Plaintiff's initial consult to establish care for ITP in April 2014) and Niagara Falls Mental Health (Treatment notes from November 2015 through December 2017), which the ALJ admitted into evidence. Tr. 444-445, 446-550.  Thereafter, counsel made no further requests for extensions of time to obtain any additional records or request assistance in obtaining additional records.  Tr. 11.  Accordingly, the ALJ explained in her decision that she closed the record and decided the case based on the available evidence within the record.  *Id.* Although the ALJ has an affirmative duty to develop the administrative record, the ALJ's obligation is not unlimited.

Under these circumstances, this Court finds that the ALJ fulfilled her duty to develop the record by holding the record open after the hearing to permit the submission of additional evidence.  *See Johnson v. Commissioner of Social Security*, 2018 WL 1428251, at *5 (W.D.N.Y. 2018) (Finding the ALJ satisfied his duty to develop the record by holding hearing open, at the request of Plaintiff's counsel for submission of additional evidence and Plaintiff's counsel submitted additional treatment records.)

**B.  The ALJ properly evaluated Plaintiff's ability to deal with stress.**

Plaintiff argues that remand is warranted for the ALJ to properly account for stress in the RFC because the ALJ failed to make an individualized inquiry into Plaintiff's ability to deal with stress pursuant to Social Security Ruling ("SSR") 85-15, 1985 WL 56857 at *4 (S.S.A. 1985).  Dkt. No. 14 at 20, 23.  Plaintiff also argues that despite according "significant weight," to the opinion of consultative psychiatric examiner, Janine Ippolito, PsyD., ("Dr. Ippolito"), the ALJ failed to adequately consider the doctor's opinion that Plaintiff would have "marked limitations in dealing with stress." Dkt. No. 14, at 21.   The Commissioner argues that SSR 85-15 is inapplicable to this matter because Plaintiff suffers from both exertional and non-exertional impairments, and that even if SSR 85-15 were applicable, the ALJ fully accounted for Plaintiff's stress-based limitations and comprehensively detailed record evidence in support of her RFC findings.  Dkt. No. 23 at 17-18.  This Court again agrees with the Commissioner.

SSR 85-15 is titled "The Medical-Vocational Rules as a Framework for Evaluating Solely Non-exertional Impairments."  The Second Circuit Court of Appeals

has interpreted this language to mean that SSR 85-15 is inapplicable to a case involving a claimant who suffers from both exertional and non-exertional impairments.  *Roma v. Astrue*, 468 F. App'x. 16, 20 (2d Cir. 2012) (summary order); *see also Wyder v. Colvin*, 2018 WL 3866669, at *4 (W.D.N.Y. 2018) (collecting cases).  Therefore, because Plaintiff suffers from both exertional and non-exertional limitations, SSR 85-15 does not apply in this case.

Dr. Ippolito opined that Plaintiff could appropriately deal with stress with marked limitations, could follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration and attention, learn new tasks, perform complex tasks independently, and make appropriate decisions with no evidence of limitations.  Tr. 21.  Dr. Ippolito noted that Plaintiff's marked limitations in dealing with stress were due to her current emotional distress, fatigue, and substance use.  Tr. 317. Although noting that Plaintiff was not receiving any mental health treatment at the time of Dr. Ippolitio's examination, and that Plaintiff has a history of experiencing improvement in her symptoms when she receives treatment, the ALJ accorded Dr. Ippolito's opinion "significant weight" because of its consistency with the record.  Tr. 19, 21-22.

In accordance with Dr. Ippolito's opinion, the ALJ limited Plaintiff to work in a low stress environment, further specifying that Plaintiff should have no supervisory responsibilities; no work at production rate pace and no fast-moving assembly line-type work; no independent decision-making required, except with respect to simple, routine,

repetitive decisions; and with few, if any, work place changes in routines, processes or settings.  Tr. 16.  The ALJ also specified that Plaintiff can not tolerate work requiring a high level of attention to detail, work that is subject to no more than occasional supervision, and work that involves occasional contact and interaction with supervisors, co-workers and the public.  *Id.*  Thus, the ALJ thoroughly evaluated Plaintiff's ability to deal with stress and properly accounted for the limitations identified by Dr. Ippolito.  *See Uplinger v. Berryhill,* 2019 WL 4673437, at *7 (W.D.N.Y. 2019) ("Marked limitations in mental functioning, including a marked limitation in ability to deal with stress, do not mandate a finding of disability, but can be addressed with additional limitations to a plaintiff's RFC, such as limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements).

## CONCLUSION

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 14) is DENIED.  Defendant's Motion for Judgment on the Pleadings (Dkt. No. 23) is GRANTED.  The Clerk of Court shall enter judgment and close this case.

**SO ORDERED.**

DATED:      Buffalo, New York
                 August 28, 2020


                                             *s/ H. Kenneth Schroeder, Jr.*
                                             **H. KENNETH SCHROEDER, JR.**
                                             **United States Magistrate Judge**

13